OPINION
This appeal arises from the Jefferson County Common Pleas Court's final decree of divorce incorporating Findings of Fact and Conclusions of Law. Appellant challenges the trial court's division of property, denial of spousal support and other findings of fact. For the following reasons, the decision of the trial court is affirmed in part and reversed and remanded in part for further action pursuant to this Court's Opinion.
Appellant, Richard Howard McClelland, and Appellee, Gail Kesel McClelland, met in 1973 at the psychiatric ward of a veterans' hospital where Appellant was a patient and Appellee was working as a student nurse in the United States Army. Appellant had served two tours in the Vietnam War and allegedly suffered from post traumatic stress disorder. Appellant was receiving disability benefits which continued during the marriage. The parties married on April 4, 1975. They have no children.
While on active duty with the Army, Appellee earned her bachelors degree in nursing, a masters degree in psychiatric nursing and a doctoral degree in education. Appellant did not work during the marriage, claiming that his disability prohibited employment. Appellee testified to the contrary, stating that Appellant refused to work despite her requests to find employment while she was working two jobs and attending school. Nonetheless, Appellant did obtain his associate, bachelor and masters degrees in psychology with Appellee's financial support.
Appellee eventually attained the rank of lieutenant colonel. Appellee's military assignments included various locations such as the state of Washington, Hawaii, Germany and California. During the marriage, the parties purchased real estate in Washington, California and Hawaii. Appellee attributed the decay of the marriage to Appellant's alleged illicit affair with a seventeen year old German national which had begun while they lived in Germany in 1985. Appellee alleged that the affair continued after they left Germany and relocated to California in 1988. Appellant denied having an affair and testified that Appellee encouraged the girl to visit them in America. Appellee admitted that she allowed the girl to stay with them in California, but attributed this and other lapses in judgment to continuing attempts to reconcile with Appellant due to her co-dependent personality and feelings of guilt brought on by Appellant.
Nevertheless, in 1991, Appellant left the marital residence in California and relocated to Steubenville, Ohio where he was raised. Appellant maintained that he and Appellee mutually agreed that he would return there to start a business, but Appellee denied such an agreement. The German girl also relocated to Steubenville and became a manager of the bar and restaurant that Appellant opened. Appellee denied active involvement in the business but said that she was listed as an officer on the board of the corporation and paid corporate bills to ensure her good credit and to support her husband.
On December 9, 1994, Appellee filed for divorce. Following numerous delays, the action proceeded to trial on June 26-27 and July 10, 1997. On September 4, 1997, the court filed its Findings of Fact and Conclusions of Law which incorporated several of the parties' proposed findings of fact. The court found that the effective date for the termination of the marriage was December 9, 1994, the date that Appellee filed for divorce. The court denied Appellant any portion of Appellee's vested military pension, denied spousal support for Appellant, denied Appellant the right to be designated as a beneficiary of Appellee's military pension survivor benefit plan, found that $4,000.00 was owed to Appellee's mother for a down payment loan on one of the marital residences and found that Appellant expended funds which were separate premarital property as a down payment on one of the marital residences. On September 30, 1997, the trial court filed a final decree of divorce.
On October 14, 1997, Appellant filed his notice of appeal and on October 28, 1997, Appellee filed her notice of appeal. At oral argument, counsel for Appellee informed this court that she was abandoning her cross-appeal as any claim made would be meritless. Appellant raises six assignments of error. Appellant's first assignment of error alleges:
 "THE TRIAL COURT ERRED IN FAILING TO VALUE AND AWARD THE DEFENDANT ANY PORTION OF THE MILITARY PENSION EARNED DURING THE PARTIES' MARRIAGE."
Appellant agrees with the trial court's determination that 70% of Appellee's military pension constitutes marital property. However, Appellant takes issue with the court's refusal to divide the marital portion of the pension between the parties.
Appellant's argument encompasses several issues. First, Appellant alleges that the trial court failed to assign a value to the pension as required by law and that the court erroneously focussed on the economic impact of its division on the parties rather than on the nature of the division of the pension itself. Second, Appellant states that the trial court applied the factors set forth in R.C. § 3105.18 to be considered when awarding spousal support, rather than the factors set forth in R.C. § 3105.171 to be considered when dividing marital property. Third, Appellant argues that the trial court failed to consider Appellee's Social Security retirement benefits when dividing her pension. Appellant claims that this resulted in an inequitable result as he was disabled and unable to contribute to social security for retirement benefits.
Appellee responds by arguing that several factors lead to the determination that an award of any portion of her pension to Appellant would be inequitable. Appellee stresses that although Appellant was receiving disability benefits, he contributed nothing to the acquisition of marital assets. She also contends that the trial court found the Appellant actually diminished the marital estate due to a lack of effort to be productive. Appellee points to evidence that Appellant refused to seek employment, that he relied on her financial support and that he was engaged in an illicit affair with a seventeen year old girl during the marriage. Appellee argues that the court was permitted to consider these factors as relevant and equitable when dividing marital property.
When reviewing a trial court's division of marital property, we apply the abuse of discretion standard. Thus, we will not disturb the trial court's judgment unless the decision was unreasonable, arbitrary or unconscionable. Bisker v. Bisker
(1994), 69 Ohio St.3d 608, 609, citing Berish v. Berish (1982),69 Ohio St.2d 318 and Blakemore v. Blakemore (1983), 5 Ohio St.3d 217. To determine if the lower court abused its discretion:
 "* * * a reviewing court cannot examine the valuation and division of a particular marital asset or liability in isolation; rather, the reviewing court must view the property division in its entirety, consider the totality of the circumstances, and determine whether the property division reflects an unreasonable, arbitrary or unconscionable attitude on the part of the domestic relations court."
Jelen v. Jelen (1993), 86 Ohio App.3d 199, 203, citing Brigantiv. Briganti (1984), 9 Ohio St.3d 220.
Retirement benefits acquired or accumulated during the marriage by spouses are marital property subject to property division in a divorce action. Erb v. Erb (1996), 75 Ohio St.3d 18, reconsideration denied, 75 Ohio St.3d 1452; R.C. § 3105.171(A)(3)(a)(i). The division of property need not be equal between the parties, but must be equitable. Bisker v.Bisker, 609, citing Cherry v. Cherry (1981), 66 Ohio St.2d 348,353. At a minimum, a trial court must address the statutory factors relevant to dividing marital property. Bisker v.Bisker, 609. R.C. § 3105.171 in relevant part provides:
 "(C)(1) Except as provided in this division or division (E) of this section, the division of marital property shall be equal. If an equal division of marital property would be inequitable, the court shall not divide the marital property equally but instead shall divide it between the spouses in the manner the court determines equitable. In making a division of marital property, the court shall consider all relevant factors, including those set forth in division (F) of this section.
 "(2) Each spouse shall be considered to have contributed equally to the production and acquisition of marital property.
"* * *
 "(F) In making a division of marital property and in determining whether to make and the amount of any distributive award under this section, the court shall consider all of the following factors:
"(1) The duration of the marriage;
"(2) The assets and liabilities of the spouses;
"* * *
"(4) The liquidity of the property to be distributed;
 "(5) The economic desirability of retaining intact an asset or an interest in an asset;
 "(6) The tax consequences of the property division upon the respective awards to be made to each spouse;
 "(7) The costs of sale, if it is necessary that an asset be sold to effectuate an equitable distribution of property;
 "(8) Any division or disbursement of property made in a separation agreement that was voluntarily entered into by the spouses;
 "(9) Any other factor that the court expressly finds to be relevant and equitable.
"* * *
 "(G) In any order for the division or disbursement of property or a distributive award made pursuant to this section, the court shall make written findings of fact that support the determination that the marital property has been equitably divided and shall specify the dates it used in determining the meaning of "during the marriage.
"* * *
 "(J) The court may issue any orders under this section that it determines equitable * * *."
The marital portion of a spouse's pension involves multiple considerations which must be addressed by a trial court in a divorce action. Pension benefits are not only marital assets subject to division but must also be considered in relationship to an award of spousal support. Hoyt v. Hoyt (1990), 53 Ohio St.3d 177,178-179. Because of these interests, no general rule will, "* * * provide for every contingency and no specific rule can apply in every case." Id., 179. Accordingly, the Ohio Supreme Court has held, "* * * that when considering a fair and equitable distribution of pension or retirement benefits in a divorce, the trial court must apply its discretion based upon the circumstances of the case, the status of the parties, the nature, terms and conditions of the pension or retirement plan, and the reasonableness of the result * * *." Id.
A pension benefit need not always be divided between the parties, but must be considered in making a total property division. In Holcomb v. Holcomb (1989), 44 Ohio St.3d 128,132-133. quoting Esteb v. Esteb (1962), 173 Ohio St. 259, 263, the court stated that: "* * * [a] trial court is not required to divide the pension benefits as a matter of law; however, it must consider the pension plan as a marital asset in reaching an equitable division of property." In Hoyt, supra, the Court also held that the trial court has discretion in this area and that, "* * * any given pension or retirement fund is not necessarily subject to direct division but is subject to evaluation and consideration in making an equitable distribution of both parties' marital assets." Id. at 180. A pension may be divided and/or considered in an appropriate manner once the trial court has determined a value, "a sum certain." Id., 182.
With the above legal standards in mind, we note that in its findings of fact, the trial court assigned a value to Appellee's pension. The court found that:
 "28. With respect to the pension of the Plaintiff, there is a vast discrepancy in the monetary values attributed to the pension by Plaintiff's expert and Defendant's expert. The Court finds that of the pension to be received by the Plaintiff that it will be 70% of her base pay which is currently $5,128.80 per month, which will result in a monthly pension of $3,590.16. Of this amount, the Court finds that 70% of the pension was earned during the marital relationship of the parties. The Court therefore finds that $2,513.12 of the Plaintiff's pension is a marital asset, and $1,077.04 is a non-marital asset."
In certain situations, the valuation of a pension by determining the payable monthly benefit is appropriate. InHoyt, supra, the Ohio Supreme court stated that where spouses are of retirement age or close to retirement age, it may be in the parties' best interest to consider the pension or retirement benefits as income. Id., 182. In the present case, the record reflects that Appellee was very close to retirement at the time of the trial court's ruling. In its Findings of Fact filed on September 4, 1997, the court incorporated Appellee's proposed finding of fact number 56 which stated that Appellee, "* * * as a military personnel, has served her maximum time allotted, and must retire as of the month of October, 1997."
Certainly it would be permissible for the court to treat Appellee's pension as income and determine her monthly benefit from it. However, the court's Findings of Fact at paragraph 28 clearly manifests that the court treated the pension as a marital asset, not as income. The court did not consider the value of this marital asset when dividing marital property. In its Findings, paragraph 38, the trial court set forth a list of property to be divided between the parties. However, the court did not include the pension in this division or consideration of marital assets. The trial court stated in its Findings of Fact, paragraph 38 that, "[t]his court finds that the division of assets and liabilities, exclusive of the pensions, to be equitable, although not equal." (Emphasis added.)
Without doubt, the trial court elsewhere treated the pension as a marital asset subject to division. Although the court logically determined what percentage of the pension constituted marital property, the court's consideration of Appellee's monthly retirement benefit, absent regard for the duration of such monthly benefits, does not provide a "sum certain" as a basis for consideration in light of the rest of the marital assets. Without more, we cannot determine whether the court made an equal or equitable division of assets, here.
As stated earlier, no court can examine the valuation and division of a particular marital asset or liability in isolation. Rather, a court must view the property division in its entirety. Jelen, supra. When the lower court failed to value the marital portion of the pension in a manner consistent with placing it in the context of the entire marital estate, that court deprived us, on review, of a meaningful basis of such review. This approach by the trial court warrants reversal and remand for proper valuation and consideration. As we noted inWinkler v. Winkler (1997), 117 Ohio App.3d 247, when allocating property between parties, "* * * the trial court must indicate the basis for its award in sufficient detail to enable a reviewing court to determine that the award is fair, equitable and in accordance with the law." Id., 250-251, quoting Kaechelev. Kaechele (1988), 35 Ohio St.3d 93, paragraph two of the syllabus.
Appellant also argues that the trial court failed to consider the relevant statutory factors to determine an equitable distribution of marital property. This argument is moot. As we have already determined that the trial court failed to meaningfully evaluate the pension and clearly decide just how these monies were to be considered, we effectively determined that there was no complete distribution of marital assets. On remand, the trial court should assign a valuation to the pension and must begin anew to evaluate the property division in total. Such review will necessarily include a determination of the parties relevant standing in regards to social security or other benefits which have, or could have been earned during the marriage. In so doing, the court will need to apply R.C. § 3105.171, including R.C. § 3105.171(F)(9), which provides that the trial court may consider any factor it deems relevant and equitable.
In the present case, however, we must note that the trial court did consider at least Appellee's future Social Security benefits. In Findings of Fact 29, the trial court determined that Appellee had accrued $51,557.00 in Social Security benefits and that this was a non-marital asset. In Findings of Fact 42, the court found that there was no guarantee that Appellee would live long enough to collect those benefits but that if she did, Appellee would by law receive a share of those benefits due to the length of the marriage.
Based on the foregoing, Appellant's first assignment of error has merit and we merely reverse and remand for a new determination by the trial court on this issue.
Appellant's second assignment of error alleges:
 "THE TRIAL COURT ERRED IN FAILING TO AWARD ANY SPOUSAL SUPPORT TO THE DEFENDANT."
As to the allegations in his second assignment, R.C. § 3105.171(C)(3) provides that, "[t]he court shall provide for an equitable division of marital property under this section prior to making any award of spousal support to either spouse under section 3105.18 of the Revised Code and without regard to any spousal support so awarded."
Our disposition of the first assignment of error necessarily remands this matter back to the trial court as well. it is necessary that a valid distribution of marital assets must precede an award (or disallowance) of spousal support. Based on our reversal of assignment number one, this assignment of error is found to be with merit.
Appellant's third assignment of error alleges:
 "THE TRIAL COURT ERRED IN NOT REQUIRING THE PLAINTIFF TO DESIGNATE DEFENDANT AS A BENEFICIARY OF HER MILITARY PENSION SURVIVOR BENEFIT PLAN (SBP)."
This assignment of error is also addressed by our remand pursuant to the first assignment of error. The survivor benefit plan is necessarily a benefit of Appellee's military pension. Any allocation of this benefit is tied to our remand and subject the trial court's determination upon remand.
Appellant's fourth assignment of error allege:
 "THE TRIAL COURT ERRED IN FINDING THAT THE MARITAL EQUITY IN THE WASHINGTON STATE HOUSE WAS $108,317.17."
Appellant states that it its Findings of Fact, the trial court incorporated several of Appellee's proposed findings of fact. One of these proposals would have the court find that the house in Washington had a net value of $70,518.00. Appellant argues that the trial court abused its discretion when in it then determined that the Washington property had a net value of $108,317.27. Appellant argues that this is somehow contrary to the court's alleged adoption of Appellee's proposed net value for the house. According to Appellant, the award of this property at the higher value was prejudicial to him as it worked to deprive him of other marital assets in an amount equal to the difference between the two valuations.
Again, our standard of review in a division of marital property is whether the court abused its discretion. Schafer v.Schafer (1996) 115 Ohio App.3d 639, 642. As we stated earlier, we will not disturb the trial court's judgment unless the decision was unreasonable, arbitrary or unconscionable. Bisker,supra, 609.
Our review of the record reveals no abuse of discretion as to this issue. In its Findings of Fact number 1, the trial court adopted Appellee's proposed findings, numbers 9-21, "* * * unless specifically stated to the contrary herein." Appellee's proposed findings listed the fair market value of the home as $155,300.00. The parties stipulated to this amount during trial. Tr. 89. Another of Appellee's proposed findings stated that the home had a mortgage balance of $40,413.00 and that the home had a net value of $70,518.00 after considering accumulated depreciation and deduction of all costs relative to selling the house.
It is clear from his entry that the trial court specifically reserved authority to contradict portions of the incorporated proposed findings submitted by Appellee. It is equally clear that the court did not adopt in full Appellee's proposed finding number 14 relative to depreciation and costs, but only adopted the outstanding mortgage balance of $40,413.00. The court also adopted part of Appellant's proposed findings which stated in part that he provided the down payment for the house of $6,569.83 from his own separate premarital monies; his disability income.
From these figures, the court took the fair market value of $155,300.00, subtracted the outstanding mortgage balance of $40,413.00 and Appellant's separate premarital property down payment of $6,569.83 to determine the net equity in the home to be $108,717.17. From the stipulations and proposed findings of fact adopted by the court, as well as the specific detail in which the court set forth its own specific findings, we can find no abuse of discretion.
Appellant's fifth assignment of error alleges:
 "THE TRIAL COURT ERRED BY FINDING THAT A $4000.00 LOAN EXISTED FROM THE PLAINTIFF'S MOTHER, WHICH WAS ORDERED PAID FROM MARITAL ASSETS."
In Findings of Fact 24, the court stated that:
 "24. * * * [t]he Court further finds that with respect to the purchase of [the California] home that $4,000.00 for the down payment came to the parties from the Plaintiff's mother as a loan and that the same has never been repaid. The Court finds it equitable that this sum of money be repaid to the Plaintiff's mother out of the marital assets of the parties upon distribution."
Appellant argues that the trial court abused its discretion in making this determination because no evidence was presented at trial to support this except, "for the brief and self-serving testimony of the Wife."
This assignment of error lacks merit. This matter concerns division of marital property and allocation of debt, both of which are within the discretion of the trial court. Floyd v.Floyd (Aug. 18, 1998), Mahoning App. No. 95-CA-54, unreported, 6 and, thus, we will not disturb the trial court's judgment unless the decision was unreasonable, arbitrary or unconscionable.Bisker, supra, 609.
A trial court has the duty to determine the credibility of the witnesses. Absent an abuse of discretion, this determination will not be overturned. Parker v. Parker (Sept. 19, 1990), Belmont App. No. 88-B-48, unreported, 2. Appellee testified that her mother loaned her $4,000.00 for part of a down payment on the California home. Tr. 482-483, 535. Despite the fact that the only testimony presented regarding the down payment monies was from Appellee, the trial court as trier of fact is in the best position to determine the credibility of the witnesses and chose to believe Appellee. Appellant presented no contrary testimony refuting this fact. No abuse of discretion in this matter is evident on the record.
Appellant's sixth assignment of error alleges:
 "THE TRIAL COURT ERRED BY FAILING TO AWARD THE DEFENDANT HIS SEPARATE PRE-MARITAL PROPERTY."
Appellant contends that although the trial court found that $6,569.83 of the down payment monies contributed to the Washington residence was his separate premarital property, the court failed to segregate that amount and require that it be paid to him before the division of any marital property.
This assignment of error lacks merit. Once again, we are dealing with an abuse of discretion standard. Schafer, supra, 642. We will not disturb the trial court's judgment unless the decision was unreasonable, arbitrary or unconscionable. Bisker,supra, 609.
R.C. § 3105.171(D) provides in relevant part, "* * * the court shall disburse a spouse's separate property to that spouse." In Finding of Fact 8, the court found that Appellant contributed $6,569.83 in separate property to the down payment on the Washington marital residence. In Finding of Fact 10, the court finds a net equity in the Washington residence to be $108,717.17 after subtracting Appellant's down payment and the outstanding mortgage balance from the fair market value stipulated by the parties. The court then awarded this home to Appellant.
While the court did not order the amount of Appellant's down payment be repaid out of the marital assets, it did, in effect, segregate and award the money to Appellant by attributing a lesser market value to the Washington property. This property, which Appellant was awarded, included his down payment contribution within it. The amount of the down payment was properly credited to Appellant, although not in the form that he expected.
For the foregoing reasons, we remand this matter to the trial court in order to more clearly evaluate Appellee's pension, including the survivorship benefit plan, and to then make new findings based on this as to the equitable distribution of pension benefits and spousal support.
COX, P.J., VUKOVICH, J., concurs.
APPROVED:
 _____________________ WAITE, J.